**FREEMAN HOWARD P.C.**
441 E. Allen Street, P.O. Box 1328
Hudson, New York 12534
(518) 828-2021
(518) 828-2420 Facsimile
Paul M. Freeman, Esq.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
**POUGHKEEPSIE DIVISION**

| | |
|---|---|
| In re:<br><br>    DANIEL HENKE<br>    aka HENKE CYCLE SHOP,<br>                               Debtor. | Chapter 7<br><br>Case No. 17-35238 (CGM)<br>Hon. Cecelia G. Morris |
| DOMINICK CANNAVO,<br>                                PLAINTIFF<br><br>-against-<br><br>DANIEL HENKE,<br>                                DEFENDANT | COMPLAINT TO DETERMINE<br>DISCHARGEABILITY OF<br>DEBT UNDER<br>11 U.S.C. §523 |

Plaintiff, DOMINICK CANNAVO, by his attorneys, FREEMAN HOWARD, P.C., as a

for his complaint against the defendant, DANIEL HENKE, alleges as follows:

**PARTIES**

    1.    The plaintiff, DOMINICK CANNAVO (herein "Cannavo"), is a natural person

residing in New York County, State of New York.

    2.    The defendant, DANIEL HENKE (herein "Henke"), d/b/a Henke Cycle Repair is a

natural person residing in the Town of Cairo, County of Greene and State of New York.

3. Debtor filed with this Court on February 17, 2017, a voluntary petition for relief under Chapter 7 of the Bankruptcy Code.

### JURISDICTION AND VENUE

4. This Court has jurisdiction over the subject matter of this core proceeding pursuant to 28 U.S.C. § 157(b) and 1334. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

5. The relief requested herein is warranted under 11 U.S.C. §§ 523(a)(2), (a)(4) and (a)(6).

### BACKGROUND

6. Plaintiff Cannavo is entitled to have the debt in the amount of $293,230.64 ($164,500, plus interest and costs), in this proceeding determined to be non-dischargeable on the basis that the debtor Henke obtained the money from plaintiff through the use of false pretenses, false representations, and/or actual fraud. Additionally, the debt is not dischargeable because it was the result of larcenous conduct whereby the Debtor Henke was unjustly enriched at the hands of plaintiff.

7. Following a three day trial of this issue, the Supreme Court, Greene County (Judge Lisa M. Fisher) found that Debtor had defrauded Cannavo out of cash payments totaling $164,500, plus interest, and had failed to perform any work, supply any motorcycles or otherwise provide any consideration for his receipt of the cash payments, despite repeated promises to the contrary.[1]

### RELATIONSHIP BETWEEN CANNAVO AND THE DEBTOR

8. During the period between approximately 2002 and 2012, Debtor and Cannavo entered into a business relationship whereby certain antique vintage motorcycles,

---

[1] A copy of Judge Fisher's Decision in the action: Dominick Cannavo v. Daniel Henke d/b/a

owned by Cannavo, were delivered by Cannavo, or his agents, to Henke Cycle Shop for the purposes of undergoing examination and assessment, and only after plaintiff was thoroughly advised of the condition, and provided with a written assessment, would Henke be instructed to potentially undertake restoration of the motorcycles.

9. The majority of the motorcycles in defendant Henke's possession were purchased by Cannavo from independent third parties, and subsequently shipped to Debtor for his inspection and assessment. Debtor has previously acknowledged and admitted that he was in possession of no less than six motorcycles owned by Cannavo, including the 1951 Indian Chief, the 1952 Indian Chief, the 1953 Indian Chief, the two (2) 1947 Indian Chiefs, and the 4-cylinder Indian.

10. In addition, during the course of almost a decade of business relationship, Debtor Henke would act as a broker, liason, dealer and/or agent to identify certain antique motorcycles that were for sale, and apprise plaintiff Cannavo of their availability.

11. Allen Veverka (herein "Veverka") was Debtor Henke's very close grade-school friend who lived in the Town of Cairo, Greene County, New York. Veverka regularly bought and sold antique and vintage motorcycles.

12. Henke briefly introduced Cannavo to Veverka.

13. Henke acted as a broker, liason, dealer and/or agent for Veverka in the offer and sale of certain antique motorcycles from Veverka to Cannavo.

## THE 1937 KNUCKLEHEAD

14. Henke represented to Cannavo that Veverka owned a 1937 Knucklehead that Veverka was prepared to sell to Cannavo, and which Henke would then restore for Cannavo.

15. Cannavo relied on the representations and statements of Henke as to the condition, value and state of repair of the 1937 Knucklehead.

16. Henke acted as broker, liason, dealer and/or agent for Veverka and brokered the sale of a 1937 Knucklehead Harley Davidson Motorcycle to Henke.

17. Henke represented to Cannavo that he would receive the payments from Cannavo

on behalf of Veverka, and would take possession of the 1937 Knucklehead on behalf of Cannavo.

18.     Henke fraudulently, larcenously, and under false pretenses received $84,500 from Cannavo for the 1937 Knucklehead.

19.     Henke never secured or delivered possession of the 1937 Knucklehead from Veverka to Cannavo, and instead, kept all of Cannavo's money for himself.

20.     Supreme Court Judge Lisa M. Fisher found that Henke was unjustly enriched in that he induced Cannavo to pay money to Henke under the false pretense that Cannavo would receive title to the 1937 Knucklehead from Veverka, and instead, Henke kept the money and delivered nothing, as follows:

> "Plaintiff established he paid $84,500 to Defendant Henke and received nothing in return, and it would be against equity to allow Defendant Henke to retain said funds." (Exh. A – Page 25).

## 1936 AND 1937 HARLEY DAVIDSON MOTORCYCLES

21.     In or about early spring of 2006, Henke contacted Cannavo and informed him of two original paint 1936 and 1937 Harley Davidson motorcycles that Henke was attempting to sell.

22.     Henke represented to Cannavo that he was in the New York City area and that he had the "tin", consisting of the painted gas tanks and fenders for the two motorcycles, with him and that he wanted to show plaintiff.

23.     Henke went to Top Dead Center motorcycle shop in Tarrytown, New York to show James Reich the tin while he waited for plaintiff to finish with work.

24.     Upon finishing with work, plaintiff went to the bank to withdraw money and then met defendant in the parking lot of the El Dorado Diner in Tarrytown, New York, at which time defendant showed plaintiff the tin.

25.     Henke represented that the tin was from the two motorcycles thereby fraudulently inducing Cannavo to make payment for same, despite Cannavo not having seen the entire motorcycles. Henke and Cannavo agreed on a purchase price of $35,000.00 combined for the two

motorcycles.

26. In sole reliance upon the representations of Henke, Cannavo gave him $5,000.00 in cash at the El Dorado Diner parking lot in furtherance of the purchase of the two motorcycles.

27. Plaintiff then gave the remaining $30,000.00 in cash to James Reich to deliver to defendant. Henke travelled to James Reich's house in Irvington, New York to pick up the cash.

28. Due to the long standing relationship and the fact that Cannavo trusted Henke, Cannavo did not ask for a receipt for any of the cash transactions.

29. Cannavo never saw the tin or the completed motorcycles again despite due demand for the delivery of the two motorcycles.

30. Supreme Court Judge Lisa M. Fisher found that Henke was unjustly enriched in that he induced Cannavo to pay money to Henke under the false pretense that Cannavo would receive title to the 1936 and 1937 Harley Davidson motorcycles, and instead, Henke kept the money and delivered nothing. (Exh. A – Page 25).

## HENKE BROKERED THE SALE OF VEVERKA'S 1939 INDIAN CHIEF

31. Veverka owned an original paint 1939 Indian Chief with Orange and Blue "World's Fair" color scheme. (hereinafter the "1939 Indian Chief").

32. Cannavo and Henke spent time at the 2007 Rhinebeck swap meet examining the 1939 Indian Chief.

33. In late September or Early October of 2008, Henke contacted Cannavo and informed him that Veverka was willing to sell the 1939 Indian Chief "World's Fair" and that if Cannavo did not act quickly that someone else would buy it.

34. Henke represented to Cannavo that due to the economic downturn, Veverka's modular home business was suffering along with the rest of the economy, and he needed to sell some of his motorcycles, including the 1939 World's Fair Indian Chief.

35. In mid October 2008, with Henke acting as intermediary, Cannavo agreed to purchase the 1939 Indian Chief "World's Fair" from Veverka for $75,000.00.

36. On or about October 16, 2008, at the instruction of Henke, Cannavo wired Veverka $65,000.00 in furtherance of the purchase of the 1939 Indian Chief.

37. Thereafter, on Sunday October 19, 2008, in sole reliance on the representations of Henke that Veverka was selling his 1939 World's Fair Indian Chief, Cannavo met Henke and his wife, Diana Henke, at a rest stop on the New York State Thruway near the Interstate 84 interchange, at which time Cannavo gave Henke $10,000.00 in cash to complete the transaction for the 1939 Indian Chief. Henke never gave Veverka the $10,000.00 cash payment, instead fraudulently keeping it for himself.

38. Henke represented to plaintiff that he would maintain possession of the 1939 Indian Chief at Henke Cycle Repair since the motorcycle needed a wiring harness.

39. In reality, Henke never took possession of the motorcycle, and Veverka claimed he was still owed the $10,000.

40. Henke induced Cannavo to pay the $10,000 in cash using false pretenses.

41. Supreme Court Judge Lisa M. Fisher found that Henke was unjustly enriched in that he induced Cannavo to pay money to Henke under the false pretense that Cannavo would receive title to Veverka's 1939 World's Fair Indian Chief, and instead, Henke kept the money and delivered nothing. (Exh. A – Page 26).

### 1958 PANHEAD HARLEY DAVIDSON

42. Now, in his Petition, Debtor lists ownership of only $1,920 in personal property, despite his vast somewhat irreplaceable collection of vintage motorcycle new old stock parts, inventory and supplies, including a $50,000 bulk new old stock parts purchase made from a retiring Mohawk Harley Davidson dealer in Mohawk, New York.

43. Henke brokered a deal with Cannavo whereby Cannavo was to purchase a 1958 Harley Davidson Panhead motorcycle from an Estate representative that Henke was representing.

44. In or about February of 2011, Henke contacted Cannavo regarding a 1958 Harley Davidson Panhead that was owned by a gentleman who had recently passed away, and Henke

represented that he was acting as the deceased's wife's representative in the sale of the motorcycle.

45.  Relying solely on Henke's advice that the motorcycle was complete and that it was a good buy, Cannavo agreed to purchase the motorcycle for $35,000.00, with Henke brokering the deal on behalf of the Estate.

46.  In sole reliance of Henke's representations, Cannavo then left $35,000.00 in cash with James Reich at Top Dead Center in February and March of 2011. Thereafter, Henke picked up the cash from James Reich at Top Dead Center on two separate occasions.

47.  Once again, due to the long standing relationship between plaintiff and defendant, which had been going on for approximately eight years at that point in time, and the fact that plaintiff trusted defendant, plaintiff did not ask for a receipt at the time the $35,000.00 in cash was given to the defendant.

48.  Notwithstanding receipt of the payment in cash, the motorcycle was never delivered to Cannavo by Henke despite repeated demands for same. Instead, acting with his counsel, when demands were made for the delivery of his motorcycles, Henke stopped taking plaintiff's phone calls, Henke's wife stopped talking to plaintiff, Henke had plaintiff escorted from the Rhinebeck swap meet, and Henke otherwise completely failed to respond to plaintiff's demands and inquiries.

49.  Supreme Court Judge Lisa M. Fisher found that Henke was unjustly enriched in that he induced Cannavo to pay money to Henke under the false pretense that Cannavo would receive title to a 1958 Panhead Harley Davidson, and instead, Henke kept the money and delivered nothing. (Exh. A – Page 26).

## AS AND FOR A FIRST CAUSE OF ACTION

50.  Cannavo repeats and realleges each and every allegation set forth hereinabove as if the same where fully set forth hereinafter.

51.  Defendant Henke made false and misleading statements in order to induce plaintiff Cannavo to pay over cash in the amount of $164,500.

52. Plaintiff relied on the false and misleading statements in paying over the cash payments to Henke.

53. Henke intended to fraudulently induce Cannavo to make such payments, and in reliance thereon, Cannavo was induced to pay over the cash payments.

54. By reason of the foregoing, Plaintiff Cannavo has been damaged in the sum of $293,230.64, plus interest, costs and disbursements.

### AS AND FOR A SECOND CAUSE OF ACTION

55. Cannavo repeats and realleges each and every allegation set forth hereinabove as if the same where fully set forth hereinafter.

56. Defendant Henke acting as a fiduciary in brokering deals on behalf of Cannavo, falsely and fraudulently induced plaintiff Cannavo to pay over cash in the amount of $164,500.

57. Plaintiff relied on the false and misleading statements in paying over the cash payments to Henke as fiduciary.

58. Henke, knowing that Cannavo was relying on his representations as a fiduciary, intended to fraudulently induce Cannavo to make such payments, and in reliance thereon, Cannavo was induced to pay over the cash payments.

59. By reason of the foregoing larcenous and embezzling conduct of Henke, Plaintiff Cannavo has been damaged in the sum of $293,230.64, plus interest, costs and disbursements.

### AS AND FOR A THIRD CAUSE OF ACTION

60. Cannavo repeats and realleges each and every allegation set forth hereinabove as if the same where fully set forth hereinafter.

61. Defendant Henke made false and misleading statements in order to induce plaintiff Cannavo to pay over cash in the amount of $164,500.

62. Plaintiff relied on the false and misleading statements in paying over the cash payments to Henke.

63. Henke intended to fraudulently induce Cannavo to make such payments, and in

reliance thereon, Cannavo was induced to pay over the cash payments.

64. By reason of the foregoing willful and malicious conduct, Plaintiff Cannavo has been damaged in the sum of $293,230.64, plus interest, costs and disbursements.

## CONCLUSION

65. The Debtor, Henke, is not entitled to a discharge of the debt owed to Plaintiff Cannavo on the filed judgment amounting in total to $293,230.64 ($164,500, plus interest and costs), plus interest to the date of payment, because said debt is exempt from discharge pursuant to 11 USC 523(a)(2) and 523(a)(4).

WHEREFORE, Plaintiff, Dominick Cannavo, respectfully requests that this Court is an Order determining that the debt owed by the Debtor, Daniel Henke, to the Plaintiff, Dominick Cannavo, in the original judgment amount of $293,230.64, together with interest, is nondischargeable pursuant to 11 U.S.C. §§ 523(a)(2), (a)(4) and (a)(6), together with such other and further relief which as to the Court is deemed justified under the circumstances.

Dated: Hudson, New York
       May 15, 2017                          FREEMAN HOWARD, P.C.

By:   */s/ Paul M. Freeman*
      Paul M. Freeman, Esq. (101696)
      *Attorneys for Creditor*
      *Dominick Cannavo*
      441 E. Allen Street, P.O. Box 1328
      Hudson, New York 12534
      (518) 828-2021